**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| OPERADORA MARITIMA DE : | |
| GRANELES, S.A., : | |
|     Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | NO. 12-4848 |
| : | |
| GAMESA WIND US, LLC t/b/a : | |
| TOWERS AND METALLIC : | |
| STRUCTURES, INC., and : | |
| M.S. REED, INC., : | |
|     Defendant, : | |
| : | |
| and : | |
| : | |
| M.S. REED INDUSTRIAL SERVICES, : | |
| INC., : | |
|     Defendant/Third-Party : | |
|     Plaintiff, : | |
| : | |
| v. : | |
| : | |
| NORTH IBERIAN CONTROL S.L., : | |
|     Third-Party Defendant. : | |

**December _19, 2013**                                                                                   **Anita B. Brody, J.**

**<u>MEMORANDUM</u>**

Plaintiff Operadora Maritima de Graneles, S.A. ("OMG") brings an indemnification action against Defendant Gamesa Winds US, LLC ("Gamesa") and Defendant M.S. Reed Industrial Services, Inc. ("M.S. Reed") to recover the costs of a settlement paid as a result of damage to a shipping vessel, the BBC Louisiana. OMG leased the vessel, and Gamesa and M.S. Reed were responsible for packing and stowing the cargo, specifically windmill tower sections, windmill tower feet and a transport tool. During an October 2008 voyage, the windmill pieces

1

broke free from their lashings, damaging the vessel. OMG settled the vessel owner's claim for damages.

In response to OMG's suit, M.S. Reed filed a Third-Party Complaint against Third-Party Defendant North Iberian Control S.L. ("NIC"). M.S. Reed alleges that NIC controlled the work M.S. Reed performed lashing and stowing the windmill pieces to the BBC Louisiana. M.S. Reed seeks contribution or indemnification from NIC for liability incurred by M.S. Reed to OMG. M.S. Reed also alleges that NIC is directly liable to OMG.

NIC has filed a motion to dismiss M.S. Reed's Third-Party Complaint for failure to state a claim.[1] For the reasons described below, I will deny NIC's motion.

## I. BACKGROUND[2]

This case arises from damage to the BBC Louisiana suffered when a shipment of windmill pieces on board the vessel broke free from their lashings during an October 2008 journey from Fairless Hills, Pennsylvania to Gijon, Spain. BBC Chartering and Logistics GmbH & Co. ("BBC Chartering") owns the BBC Louisiana. BBC Chartering chartered the vessel to Plaintiff OMG for the voyage. In May 2011, BBC Chartering commenced arbitration against OMG for damages, and OMG settled the claim for $761,954.42 plus costs of the arbitration. Prior to reaching settlement, OMG put Defendants Gamesa Winds US, LLC ("Gamesa") and M.S. Reed on notice that they might be liable for the damages.

OMG now brings an indemnification suit against Gamesa and M.S. Reed to recover the amount paid in settlement and related costs. Gamesa, as the shipper of the windmill tower sections, tower feet and transport tool in question, was responsible for packing and stowing the

---

[1] I have subject matter jurisdiction over M.S. Reed's claim under both 18 U.S.C. §1332 and 18 U.S.C. §1333.
[2] All facts are taken from the Third-Party Complaint which incorporates the Complaint.

pieces on the vessel. Gamesa hired or otherwise contracted with M.S. Reed to stow and lash the windmill pieces on board the vessel.

According to M.S. Reed, NIC contracted with Gamesa to provide consulting and supervisory services with respect to the stowage, lashing, and securing of the windmill pieces. In that role, NIC planned, directed and controlled all aspects of the work performed by M.S. Reed with respect to the placement and welding of clips and D-rings and the application of chain lashings as part of the process of stowing and lashing the windmill pieces on board the vessel.

## II. LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).

To survive dismissal, a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**III. DISCUSSION**

NIC argues that M.S. Reed's Third-Party Complaint alleges insufficient facts to: (1) state a claim for contribution; (2) state a claim for indemnity; and (3) establish NIC's direct liability to OMG.

**A. Contribution**

NIC alleges that M.S. Reed fails to plead contribution. Under maritime law, a right of contribution exists if the party seeking contribution and the party from whom contribution is sought are joint tortfeasors. *See Pastore v. Taiyo Gyogyo, K.K.*, 571 F.2d 777, 783-84 (3d Cir. 1978). Pennsylvania's requirements for a contribution claim are substantially the same. *See* 42 Pa. Cons. Stat. Ann. § 8324(a) ("The right of contribution exists among joint tort-feasors."). Joint tortfeasors are defined as "two or more persons jointly or severally liable in tort for the same injury to persons or property . . . ." 42 Pa. Cons. Stat. Ann. § 8322. "In order to be joint tortfeasors, the parties must either act together in committing the wrong, or their acts, if independent of each other, must unite in causing a single injury. Two persons are not acting jointly for the purposes of committing a joint tort if the acts of the original wrongdoer [and the joint tortfeasor] are severable as to time, neither having the opportunity to guard against the other's acts, and each breaching a different duty owed to the injured plaintiff." *Foulke v. Dugan*, 212 F.R.D. 265, 270 (E.D. Pa. 2002) (citations omitted) (internal quotation marks omitted).

In this case, M.S. Reed alleges that NIC contracted with Gamesa to provide supervision and consulting services with regard to the lashing and stowing of the windmill pieces. Additionally, M.S. Reed alleges that NIC directed and controlled the work performed by M.S. Reed to lash and stow the windmill pieces. Thus, M.S. Reed and NIC jointly participated in the

stowage and lashing of the windmill pieces that broke free and damaged the vessel. These allegations are sufficient to plead contribution.

**B. Indemnification**

NIC alleges that M.S. Reed has not sufficiently pled indemnification. As a general principle, indemnification is applicable "when two or more persons are or may be liable for the same harm and one of them discharges the liability of another in whole or in part by settlement or discharge of judgment." Restatement (Third) of Torts: Apportionment Liab. § 22 (2000).

Under maritime law, a right to indemnification exists under (1) express contractual indemnification agreements; (2) vicarious liability; and (3) implied contractual indemnity when a non-negligent tortfeasor is held liable due to its relationship with the party guilty of actual fault. *Miller v. Am. President Lines, Ltd.*, 989 F.2d 1450, 1463 (6th Cir. 1993). A contractual right to indemnification is implied when there are "unique special factors demonstrating that the parties intended that the would-be indemnitor bear the ultimate responsibility for the plaintiff's safety, or when there is a generally recognized special relationship between the parties." *Araujo v. Woods Hole, Martha's Vineyard, Nantucket S.S. Auth.*, 693 F.2d 1, 2-3 (1st Cir. 1982) (citations omitted).

In the seminal case of *Ryan Stevedoring Company v. Pan-Atlantic Steamship Corporation*, the Supreme Court held that because of the special relationship between a stevedoring company and a shipowner, a stevedoring company impliedly warrants performance of its services in a workmanlike manner and agrees to indemnify a shipowner for any liability resulting from a breach of that warranty. 350 U.S. 124, 133-34 (1955). The rationale for this implied indemnity arises from the fact that a stevedoring company that takes control of a ship to load or unload it is more capable than the shipowner of avoiding accidents during the course of

that operation.  *In re Air Crash Near Peggy's Cove, Nova Scotia on September 2, 1998*, No. 99–5998, 2004 WL 2486263, *9 (E.D. Pa. Nov. 2, 2004).

"Indemnity arising from an implied warranty of workmanlike service has also been applied to non-stevedoring service contracts with a shipowner."  *Mar. Overseas Corp. v. Ne. Petroleum Indus., Inc.*, 706 F.2d 349, 353 (1st Cir. 1983) (citing *Tebbs v. Baker-Whiteley Towing Co.*, 407 F.2d 1055, 1058 (4th Cir.1969) (towing contract); *United N.Y. Sandy Hook Pilots Ass'n v. Rodermond Indus.*, 394 F.2d 65, 71 (2d Cir.1968) (*Ryan* principles frequently extended to non-stevedore maritime contractors); *Am. Exp. Lines v. Norfolk Shipbuilding & Dry Corp.*, 336 F.2d 525 (4th Cir.1964) (shipyard service contract)).  Application of *Ryan* indemnity has "rested . . . on elements of expertise, control, supervision and ability to prevent accidents."  *Fairmont Shipping Corp. v. Chevron Int'l Oil Co., Inc.*, 511 F.2d 1252, 1257 (2d Cir. 1975); *see also Peggy's Cove*, 2004 WL 2486263, at *9 ("In assessing whether to imply contractual indemnity, a court must decide whether the relationship between the parties evidences an implicit agreement or understanding that only one, as opposed to both, will have ultimate control over the enterprise and thus be in the best position to avoid harm to third parties.").

The first element of implied contractual indemnity considers the parties' intention that one party will bear the ultimate responsibility for all harm resulting from breach of contract.  *Id*.  This situation also arises when one party "holds a non-delegable duty to a third party, but transfers this responsibility to [another] by implied agreement."  *Gen. Conference of Seventh–Day Adventists v. Aon Reinsurance Agency, Inc.,* 860 F.Supp. 983, 986 (S.D.N.Y. 1994).  If the delegating party is held liable to a third party for harms intended to be borne by the delegated party, courts will imply contractual indemnity.  However, "[n]o right to indemnification exists [ ]

when the proposed indemnitee retains responsibility for a duty it owes directly to the third party." *Id.* at 987.

"The second element of implied contractual indemnity focuses upon whether the nature of the relationship between the parties is such that justice requires implying contractual indemnity." *Peggy's Cove*, 2004 WL 2486263, at *9 (citing cases implying contractual indemnity in relationships such as principal-agent, bailor-bailee, lessor-lessee, union-union member, employer-employee, vessel owner-medical provider, stevedores, and independent contractors). Contract indemnity has been implied in these circumstances because courts have recognized that one party's expertise and control over the activity place that party in the best position to avoid harm to innocent third parties. *See Fairmont Shipping*, 511 F.2d at 1257; *Mar. Overseas*, 706 F.2d at 353–54.

In the instant case, M.S. Reed's allegation that NIC planned, directed and controlled all aspects of the work performed by M.S. Reed suggests that M.S. Reed may have a claim for implied contractual indemnity against NIC. With further discovery, M.S. Reed may be able to prove that the parties agreed that NIC would ultimately be liable for any damage to the vessel because of its supervisory role. In addition, M.S. Reed may be able to show that NIC's experience and control over the process of stowing and lashing the windmill cargo put it in the best position to avoid harm to the ship. These allegations in the Third-Party Complaint are sufficient to plead indemnification.

## C. Direct Liability to OMG

Lastly, NIC argues that M.S. Reed fails to plead that NIC is directly liable to Plaintiff OMG. Under Federal Rule of Civil Procedure 14(c)(1), an admiralty defendant may bring a third-party defendant who may be liable to the plaintiff, but the Rule 8 pleading standard still

applies to third-party complaints.  M.S. Reed alleges that NIC is directly liable to OMG "to the extent that the lashing or stowage plans, or the procedures, methods, and/or materials used to stow, lash or secure the windmill cargo aboard the vessel were in any way inadequate or improper such as to have proximately caused harm to the cargo and/or the vessel."  Third-Party Compl. 3.  This allegation is sufficient to plead NIC's common law tort liability to OMG.

**IV. CONCLUSION**

      For the preceding reasons, I will deny NIC's Motion to Dismiss M.S. Reed's Third-Party Complaint.  The claims for contribution, indemnification, and direct liability against OMG meet the pleading standards.  The same discovery is required for all three claims, and discovery may result in evidence about the relationship among the parties that further supports the claims, particularly the claim for indemnification.

                                                     s/Anita B. Brody

                                                     _____
                                                   ANITA B. BRODY, J.

**Copies VIA ECF** on _____ to:                     Copies **MAILED** on _____ to: